JOHN GORMAN, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, ·November 25, 1902.

1. **Negligence: JUSTICES' COURT: STATEMENT.** A statement before a justice of the peace states a good cause of action, which after alleging that the crossing of a street railway was a regular and customary place for cars to stop for taking on and letting off passengers, and that plaintiff had notified the conductor of his wish to alight at that point, alleges that "as said car approached the regular crossing and stopping-place at. the said junction, and in full view of said conductor, stepping down upon the step of said car so as to be ready to alight as soon as same came to a standstill; that as said car approached said crossing, defendant's employees slackened its speed, but did not stop the same, and after passing said crossing, said employees · carelessly and negligently suddenly increased its speed, without giving plaintiff any warning of their intention so to do, by reason of which plaintiff was thrown to the ground and badly cut."

2. **Evidence: PRACTICE, APPELLATE.** Where there is substantial evidence to support a verdict, it is the duty of an appellate court to uphold it.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

. STATEMENT OF THE CASE.

The suit is for damages on account of injuries received by plaintiff by being thrown from the rear platform of one of the defendant's cars where he had gone preparatory to alighting from the car when it reached his point of destination.

On behalf of the plaintiff the evidence tends to prove that on the evening of October 10, 1901, he took passage on one of defendant's cars going north on

Broadway, in the city of St. Louis, intending to get off at the intersection of Hall's Ferry road and Broadway, a regular point of receiving passengers on and discharging them from defendant's cars. That when the car was within less than a block of the crossing of Hall's Ferry road plaintiff left his seat in the car and moved to the rear platform where the conductor was standing; that he then notified the conductor that he wished to get off at Hall's Ferry crossing; that the conductor assented to this request; that plaintiff, preparatory to stepping from the car, stepped down with his left foot on the lower step of the car, his right foot resting on the platform, and holding to the rail of the platform with one hand, he waited in this position for the car to stop so that he could get off; that the speed of the car though slackened was still too great to enable the plaintiff to step off in safety when the crossing was reached and he did not attempt to alight but remained in this position until the crossing was passed when the speed of the car was suddenly greatly increased and plaintiff was thereby violently thrown into the street which resulted in the fracture of one rib and a "green stick" fracture of two others on his left side; that his nose was skinned and his hands bruised. That from these injuries plaintiff suffered great pain and was unable to do any work for five or six weeks; that plaintiff is a farmer and was sixty-nine years old at the time he received the injuries.

On the part of defendant, the evidence tends to show that plaintiff did not notify the conductor that he wished to leave the car at Hall's Ferry crossing, that the conductor was not on the rear platform when plaintiff went there to alight from the car, but was in the front end of the car; that the car was running at a speed of about five and one-half miles per hour and did not slacken speed as it approached Hall's Ferry crossing, and the speed was not increased after it passed the crossing; that the power was too weak to suddenly increase the speed and the car was running

from four to five miles an hour at the time of the accident; that plaintiff walked off the car and fell into the street; that none of his ribs were broken or injured, the only injury he received being a scratch on the bridge of his nose and a bruised finger, and that he was not disabled from pursuing his ordinary avocation; that his ribs were too old to sustain a "green stick" fracture.

For the plaintiff the court gave the following instruction:

"1. The court instructs the jury that if they believe from the evidence that on or about the tenth day of October, 1901, the defendant was engaged in operating a line of electric railway along Broadway in the city for the transportation of passengers for hire, and that on or about that day plaintiff was a passenger on one of defendant's north-bound cars and notified defendant's conductor in charge of said car to cause same to be stopped at the street crossing at the junction of Hall's Ferry road and Broadway, in order that plaintiff might leave the car, and that said crossing was a regular and customary stopping place for defendant's cars, and that after so notifying said conductor said car was slowed up and the plaintiff took a position upon the steps of the back platform of the car, in full view of the conductor, for the purpose of stepping off the car when same stopped, and that the employees of defendant in charge of said car failed to stop same at said crossing as requested by plaintiff, but slackened its speed as if intending to stop, and after passing that point suddenly increased the speed of the car without giving the plaintiff any warning of their intention so to do, and that by reason of the sudden increase of speed of said car, plaintiff was thrown therefrom to the ground and injured, then you will find for the plaintiff and assess his damages at such sum as you may believe from the evidence will be a fair compensation for the pain of body and anguish of mind and disfigurement, if any, suffered by him as the direct result of being so thrown from said car. Provided you further

find from the evidence that the plaintiff at the time was exercising ordinary care for his own safety.''

And for the defendant the following:

"1. The court instructs the jury that before plaintiff can recover he must prove by the preponderance or greater weight of the evidence—

"First. That the defendant was negligent, as defined in these instructions.

"Second. That said negligence was the direct, proximate and efficient cause of whatever injuries he sustained.

"And unless the jury believe from the evidence that plaintiff has established both of these facts by the preponderance or greater weight of the evidence, plaintiff can not recover, and your verdict must be for the defendant.

"2. The court instructs the jury that if they believe from the evidence that whatever injuries plaintiff received, if any, were caused by his voluntarily stepping from the car of defendant company while in motion, plaintiff can not recover, and your verdict must be for the defendant.

"3. The court instructs the jury that even though they may believe from the evidence that defendant's car did not stop at the crossing at Broadway and Hall's Ferry road, still, that fact did not authorize the plaintiff to step from the said car while in motion. And if they further believe from the evidence that after said car passed the crossing at said point said plaintiff did voluntarily step from said car while in motion, and thereby sustained whatever injuries he received, if any, plaintiff can not recover, and your verdict must be for the defendant.

"4. The court instructs the jury that if they believe from the evidence that any witness in this case has made a statement at this trial in conflict with a statement made at a previous trial of this case, then such conflict is to be considered by the jury for the purpose of determining the credibility of such witness, and

the weight to be given to the testimony of such witness.

"5. The court instructs the jury that while the plaintiff, John Gorman, was a witness in his own behalf, the jury are the sole judges of his credibility. All statements made by him, if any, which are against his own interest, must be taken as true, but any statements in his own favor are only to be given such credit as the jury under all the facts and circumstances in evidence deem them entitled to."

"6. The court instructs the jury that in arriving at their verdict in this case they may consider all the physical facts and circumstances developed by the evidence, and apply to such facts the well-known laws of gravity and physics.

"7. The court instructs the jury that the charge of negligence made by plaintiff against defendant by this action must be proved to the satisfaction of the jury by plaintiff by the preponderance or greater weight of the evidence. The jury have no right to presume negligence, and if the evidence does not preponderate in favor of the plaintiff, then your verdict should be for the defendant.

"8. The court instructs the jury that it was the duty of the plaintiff to use ordinary care for his own protection, and if they believe from the evidence in this case that said car was going so fast that a person of ordinary prudence would not have attempted to get down on the step of said car at the time of said accident; and if they further believe from the evidence that plaintiff did get down on the step of said car while it was so going, plaintiff can not recover, and your verdict must be for the defendant."

And on its own motion the following:

"1. The jury are instructed that the term 'ordinary care,' as used in these instructions, means such care as persons of ordinary prudence and caution would exercise under the like or similar circumstances."

After the word "his" in the third line of instruction No. 2, given for defendant, the word "voluntarily"

was inserted by the court, and the same word was inserted by the court in the eighth line of the third instruction, after the word "did," to which the defendant objected and excepted.

Defendant at the close of all the evidence offered an instruction, in the nature of a demurrer to the evidence, which the court refused. The jury returned a verdict in favor of plaintiff assessing his damages at $500. After unsuccessful motions for new trial and in arrest of judgment, defendant appealed.

*Boyle, Priest & Lehmann* and *Walter H. Saunders* for appellant. .

(1) The demurrer in this case, offered at the close of plaintiff's case and again at the close of the whole case, should have been sustained, because there was no evidence of the negligence charged in the petition. Chitty v. Railroad, 148 Mo. 75; Worthington v. Railway, 72 Mo. App. 162. (2) Plaintiff's instruction was erroneous, because it did not conform to the petition, and did not require the jury to find that the car was negligently started.

*Kinealy & Kinealy* for respondent.

(1) The court committed no error in failing to give the defendant's instruction in the nature of a demurrer to the evidence. Krider v. Milner, 99 Mo. 145. (2) Plaintiff's instruction complained of by the appellant is not erroneous. Patterson v. Railway, 47 Mo. App. 572; Kern v. Cusenbary, 69 Mo. App. 223.

BLAND, P. J.—1. Defendant contends that the case should have been taken from the jury on the ground that there was no evidence of the negligence charged in the petition. The suit was brought before a justice of the peace where strict rules of pleading are not required to be observed, yet we think the complaint filed before the justice states a good cause of action.

After alleging that the crossing of Hall's Ferry road was a regular and customary place for cars to stop for taking on and letting off passengers, and that plaintiff had notified the conductor of his wish to alight at that point, the complaint alleges that "as said car approached the regular crossing and stopping-place at the said junction, and in full view of said conductor, stepping down upon the step of said car so as to be ready to alight as soon as same came to a standstill; that as said car approached said crossing, defendant's employees slackened its speed, but did not stop same, and after passing said crossing, said employes carelessly and negligently suddenly increased its speed, without giving plaintiff any warning of their intention so to do, by reason of which plaintiff was thrown to the ground and badly cut," etc.

We think this statement of the facts is sufficient to constitute negligence and states the same negligence that plaintiff's evidence tended to establish, and that it is not open to the objection that was made to the petition in the case of Chitty v. Railroad, 148 Mo. l. c. 75, nor to the objection made to the petition in Worthington v. Lindell R'y Co., 72 Mo. App. (St. L.) 162.

2.   Defendant's counsel, in their briefs, earnestly and eloquently assail the testimony of plaintiff's attending physician and the expert called in his support, and array the evidence of defendant's expert witnesses against that of plaintiff's experts for the purpose of showing that a sixty-nine-year-old rib is wholly incapable of sustaining a "green stick" fracture. Defendant's expert witnesses so testified. Plaintiff's attending physician testified that two of plaintiff's ribs did sustain a "green stick" fracture and the other expert witness for plaintiff testified that a sixty-nine-year-old rib might sustain such a fracture. Defendant's counsel regards this question as one of scientific importance and one which ought to be settled, and settled in this case, in the interest of science and justice, and appeal to us, in behalf of the noble profession of

M. D., to settle the question for them and to settle it according to the contention of defendant's counsel.

Now it would be very gratifying to us, and no doubt also to the professors and lecturers in the medical colleges of the country, if we could once for all fix the exact age when a rib will not break like a green stick, that is, break on one side, the opposite side bending but holding fast and refusing to sever. Let us consider the matter. Ribs are of ancient origin. Adam had an experience with one which if he had not had we would be in Paradise to-day as free, guileless and joyous as a singing bird in Eden's bowers, instead of sitting here laboring and sweating over this rib question. Ribs are not only ancient but common. We all carry them about us, and have them on our bill of fare every day and it seems like their qualities and propinquities would be a matter of common knowledge. But we must confess that until we read it in the bill of exceptions we never thought that there was any sympathy between ribs and green sticks, or dry ones. But the experts say, that in case of an injury to the rib, there is. It is said that "a great calamity makes all the world akin." Perhaps this explains the action of the rib in imitating the stick when visited by calamity.

There is no controversy about the fact that ribs do imitate sticks. The experts on both sides agree to this. The dispute is about the fickleness of the rib. Defendant's experts contend that after the age of sixteen she will no longer regard "green sticks" with a favorable eye, but turns to the dry stick and will sympathize with it only, while plaintiff's experts maintain that she is not so perversely fickle as to withdraw all of her favors, from the green stick and bestow all of her affection upon the dry, but even at the advanced age of sixty-nine years she has been known, as in this instance, to imitate the green stick. It has ever been thus, for we are told in ancient writings that Eve turned from Adam, the lord of all creation and the proprietor of Paradise, and listened to the blandishments of the

Vol 96 mo app—39.

Devil. But we are not going to slander our grandmother, and we hate the cowardly hypocrites who lay all the sins of the world at her door. But we all know that in the vicissitudes of fortune and the mutations of time all things change, ribs not excepted. But we do not think that these changes are, in the case of ribs, uniform as to time, but are dependent somewhat upon the strength, character and environment of the particular rib or ribs, and we must decline to lay down an ironclad rule to settle for all ages when, if at all, a rib under the process of fracture, will not imitate a green stick undergoing the same process.

In respect to the ribs in this case, their history, their age and all the facts concerning them were testified to by the witnesses in the presence and hearing of the jury. That body of men was in a better position, and they were better able to understand and weigh the evidence than we are, and it was their province to decide whether or not these particular ribs were injured. They found, not without evidence but on substantial evidence, that one of these ribs was broken and two others partially broken. There was strong countervailing evidence, but that is not material with us. Where there is substantial evidence to support the verdict it is our duty to uphold it, however strong may be the evidence the other way. To set aside verdicts because against the evidence is the province of the trial court, not ours; ours is to permit verdicts of juries to stand unless there is no substantial evidence to support them.

3. The interlineation of the word "voluntarily" in instructions numbers two and three, asked by defendant, did not in the least change their meaning and furnishes no ground for complaint. The instructions given were full and complete, appropriate to the issues and were hypothecated on the evidence and fully covered the entire case.

The case was tried without error and the judgment is affirmed. *Barclay* and *Goode, JJ.,* concur.